IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: AUREAL, INC.,<br><br>    Debtor.<br>_____/<br><br>NEXT FACTORS, INC.,<br><br>    Appellant,<br><br>  v.<br><br>AUREAL, INC.,<br><br>    Appellee.<br>_____/ | No. C 04-05100 SI<br><br>**ORDER PARTIALLY AFFIRMING BANKRUPTCY COURT'S AWARD OF ATTORNEYS' FEES TO AUREAL'S ESTATE REPRESENTATIVES** |

    Having carefully considered the submitted papers, the Court hereby AFFIRMS the bankruptcy court's grant of attorneys' fees in all respects, with the following exception: the Court REVERSES the bankruptcy court's grant of attorneys' fees related to the administrative claim and REMANDS for consideration of whether such fees are inextricably intertwined with fees related to the pre-petition claim.

**BACKGROUND**

    Prior to the commencement of this bankruptcy case, Aureal and Momentum Data Systems entered into a written Software Development Agreement ("SDA") for development of computer software. The SDA contained a clause allowing the prevailing party in any dispute arising over the interpretation or enforcement of the SDA to recover attorneys' fees and costs. Appellant's Excerpt of Record ("ER") Ex. 8 at 18.

    On April 5, 2000, Aureal filed a voluntary petition for Chapter 11 bankruptcy. Shortly thereafter, Aureal sold substantially all of its assets to Creative Technologies, Ltd. ("Creative"). Upon learning of

Aureal's bankruptcy petition, Momentum filed a proof of claim, asserting a general, unsecured claim, or pre-petition claim,[1] for $104,000. Aureal objected to all but four thousand dollars of the claim. On October 16, 2000, Next Factors, Inc. ("Next") purchased Momentum's interest in the claim submitted to Aureal's bankruptcy estate.

In July 2001, Next filed an amended pre-petition claim on Momentum's behalf in the amount of $254,000 plus uncalculated pre-petition interest and royalties. Aureal objected to the claim. The bankruptcy court issued a Memorandum of Decision in October 2001, disallowing certain portions of Next's pre-petition claim. *See* ER Ex. 7 at 11. It deferred ruling on other portions of the claim to allow Next further opportunity for discovery. *Id.*

Next also filed an administrative claim[2] for $25 million in royalties in September 2001. Next later amended the administrative claim, changing the claim from $25 million to a claim for damages of an unknown amount.

Two years after the bankruptcy court allowed Next to pursue further discovery, Aureal filed a motion for summary judgment on Next's remaining pre-petition claim and the administrative claim. In December 2003, the bankruptcy court issued a Memorandum of Decision granting Aureal's motion for summary judgment. *See* ER Ex. 12 at 25.

On February 19, 2004, the estate representatives filed a request for recovery of attorneys' fees and costs associated with litigating Next's claims. The request was for $174,781.50 in fees and $1,887.64 in costs incurred through December 31, 2003, but the estate representatives reserved the right to supplement their request to account for fees and costs incurred thereafter. The bankruptcy court granted Aureal a substantial portion of its requested fees. *See* ER Ex. 17 at 15.

---

[1] A pre-petition claim is a claim submitted during bankruptcy proceedings by a party owed some payment or performance by the party petitioning for bankruptcy. The claim is designated a pre-petition claim because the debt was incurred and outstanding before the bankruptcy petition was filed. In this case, Momentum filed a claim asserting that Aureal owed $104,000 on an executory contract and Momentum held no security on that debt. *See* 1-1 COLLIER ON BANKRUPTCY § 1.03(4)(B) (15th ed., rev. 2005).

[2] An administrative claim is a claim submitted by a creditor when an executory contract between the debtor and the claimant is assumed by the debtor's bankruptcy estate, but subsequently is breached by the estate. The claimant then has an administrative claim for damages arising from that breach. *See* 1-1 COLLIER ON BANKRUPTCY § 1.03(4)(B) (15th ed., rev. 2005).

## LEGAL STANDARD

In reviewing a bankruptcy court's decision, the reviewing court examines findings of fact for clear error and conclusions of law *de novo*. *See In re Strand*, 375 F.3d 854, 857 (9th Cir. 2004). A bankruptcy court's determination of attorneys' fees will not be disturbed "unless the bankruptcy court abused its discretion or erroneously applied the law." *Id*.

## DISCUSSION

Next brings five challenges to the bankruptcy court's decision to grant the Aureal estate representatives prevailing party attorneys' fees. The Court will discuss each in turn.

**1. The Bankruptcy Court did not err when it applied California law instead of federal bankruptcy law**

Cal. Civ. Code § 1717 provides:

> *In any action on a contract*, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

Cal. Civ. Code § 1717(a) (2005) (emphasis added). Next contends that the bankruptcy court's award of attorneys' fees pursuant to California Civil Code § 1717 constituted clear error because the action litigated was not one "on a contract," as required by the language of Section 1717. Next further argues that federal bankruptcy law is applicable, not state law. In contrast to California law, federal bankruptcy law does not provide for a general right to recover attorneys' fees. *In re Larry's Apt., L.L.C.*, 249 F.3d 832, 836 (9th Cir. 2001).

Next bases its argument on several cases in which the Ninth Circuit held that state laws permitting recovery of attorneys' fees were inapplicable to the matter before the court. In *In re Johnson,* 756 F.2d 738 (9th Cir. 1985), the Ninth Circuit held that an action seeking relief pursuant to 11 U.S.C. § 362(d) that did not involve application of California law to any substantive issues could not support a fee award pursuant to § 1717. *See id.* at 741. Next also cites *In re Fobian*, 951 F.2d 1149 (9th Cir.

1991), in which the Ninth Circuit held attorneys' fees should not be awarded absent bad faith or harassment in cases where the litigated issues are peculiar to federal bankruptcy law and are not issues of basic contract enforcement. *See Fobian*, 951 F.2d at 1153.

In contrast to both *Fobian* and *Johnson*, however, Next's pre-petition and administrative claims did not involve issues peculiar to federal bankruptcy law. Next's pre-petition claim was directly dependent on the SDA, the interpretation of which is a matter of California law. *See* ER Ex. 7 at 4. The bankruptcy court considered Next's pre-petition claim for $104,000 pursuant to the fixed fee provision in the SDA. *Id.* at 4-6. The court also considered whether the conditions of the SDA were sufficiently proved by Next to support its claim for fixed fees. *Id.* With regard to Next's pre-petition claim for royalties, the court looked at the SDA to determine whether Aureal had, by its actions, amassed an outstanding debt for payment of royalties. *Id.*

In December 2003, after continued litigation on Next's remaining claim for royalties and Next's new amended administrative claim, the bankruptcy court expended a significant amount of effort interpreting the SDA when considering Aureal's motion for summary judgment. *See* ER Ex. 12. Next's royalties claim depended on the court's interpretation of the SDA's "release for sale" language. *Id.* at 22. At no time did the bankruptcy court indicate that it was applying federal bankruptcy laws to the matter before it. The court's memoranda indicate that the primary issue before it was whether Next's claims were sufficiently based upon the terms and conditions of the SDA.

The action from which Aureal's motion for attorneys' fees arises stemmed from Next's claims seeking enforcement of the SDA, thus requiring the court to interpret the SDA. The Ninth Circuit recognizes that California Civil Code § 1717 authorizes the award of attorneys' fees in any action on a contract where the contract provides attorneys' fees shall be awarded. *See In re Baroff*, 105 F.3d 439, 442-43 (9th Cir. 1997). California courts liberally construe the "any action on a contract" language. *Id.* at 442. The bankruptcy court did not err when it applied California Civil Code § 1717 to award attorneys' fees to the prevailing party.

**2.    The Bankruptcy Court did not err in finding the SDA and its attorneys' fees clause enforceable**

Next appeals the bankruptcy court's determination that the SDA's attorneys' fee provision is

4

enforceable. At the bankruptcy court, Next argued that fairness prohibited the court from allowing Aureal recovery of attorneys' fees pursuant to California Civil Code § 1717 when Next would have been unable to recover pursuant to the SDA if it had prevailed on its claims. Before this Court, Next also argues that Aureal's rejection of the SDA resulted in the termination of the contract.[3] Next maintains that because the SDA was terminated, no provisions of the contract survive and the attorneys' fee clause is unenforceable.

### A.    Fairness of allowing recovery under SDA

The bankruptcy court awarded Aureal prevailing party attorneys' fees pursuant to California Civil Code § 1717. Section 1717 creates a reciprocal right to recovery of attorneys' fees in a contract dispute over a contract containing an attorneys' fee clause, regardless of whether the attorneys' fee clause provision in the contract would have allowed for reciprocal recovery. *See Slurry Seal v. Laborers Int'l Union*, 241 F.3d 1142, 1145 (9th Cir. 2001). The purpose of the statute is to broaden already existing attorneys' fee clauses so as to even the playing field in cases where the provision is unilateral. *Id*.

Next argues that it would have been unable to recover under the SDA because the bankruptcy court found the SDA unenforceable in its October 2001 Memorandum of Decision regarding Next's claim for royalties. However, as the bankruptcy court discussed, Next misunderstood the court's explanation of Next's inability to recover royalties based on the SDA. The bankruptcy court explained that *if* the agreement had been assumed by the debtor-in-possession and then assigned to Creative *and if* Creative subsequently sold boards containing software made by Momentum that was covered by the SDA, then Next would have had a claim for royalties.[4] Next produced no evidence that the SDA had

---

[3] The SDA was rejected by Aureal's estate representative pursuant to the third amended plan of reorganization which provided that upon confirmation of the Plan on August 27, 2001, Aureal effectively rejected any executory or unexpired lease to which it was a party that was not assumed or assigned. *See* Becker Decl. in Supp. of Opp'n to Mot. for Attorneys' Fees ¶ 5-7.

[4] In chapter 11 bankruptcy, after a petition for bankruptcy is filed and accepted, the petitioner automatically becomes the debtor-in-possession. Once a reorganization plan for the debtor-in-possession is confirmed, a liquidating trustee is appointed to conclude the proceedings. If there are still executory contracts outstanding, the trustee may assume or reject the agreement, subject to court approval. If the trustee rejects the executory contract it is deemed breach and the non-debtor contracting party has a pre-petition unsecured claim for breach of contract. If the contract is assumed by the trustee, the trustee must perform according to the terms of the contract, otherwise the contract is breached, giving rise to an administrative claim. An executory contract cannot be assumed without court approval. *See*

5

been assumed by the Aureal's estate or assigned to Creative, nor did Next produce any significant evidence that Creative sold any of the SDA software.

After the bankruptcy court dismissed Next's pre-petition claim for royalties, Next filed an administrative claim for tort damages against Aureal based on wrongful disclosure. The bankruptcy court denied that claim because Next failed to present sufficient evidence to establish a *prima facie* case supporting the claim. There is no evidence that the court intended to eliminate all possible avenues of recovery pursuant to the SDA.

### B. Consequences of terminating the SDA

Next also argues that Aureal's rejection of the SDA constituted a termination of the contract, consequently barring Aureal's recovery of attorneys' fees based on the SDA. Aureal points out that the SDA includes a provision providing for the survival of obligations located in the section of the SDA headed "Terms and Termination." The provision provides that "the following obligations shall survive the termination of this agreement: . . . (ii) . . . all dispute resolution provisions." *See* ER Ex. 8 at 18-19. The attorneys' fee clause of the SDA is clearly a dispute resolution provision, and the survival provision makes clear that the attorneys' fee clause is intended to remain enforceable despite termination of the contract. Therefore, the attorneys' fees provision is enforceable to allow Aureal's recovery of attorneys' fees.

### 3. The Bankruptcy Court erred when it allowed recovery of fees related to litigation of Next's administrative claims

Next argues that neither California Civil Code § 1717, nor the attorneys' fee provision in the SDA is broad enough to include Aureal's fees and costs expended litigating Next's administrative claim. The bankruptcy court agreed with Next that Aureal could not recover pursuant to Section 1717 because its litigation of the administrative claim was not to "enforce" the SDA as the language of the statute requires. ER Ex. 17 at 10-11. However, the court concluded that Aureal could recover if the services in question were covered by section 8.7 of the SDA covering recovery of fees incurred to "interpret" or

---

1-1 COLLIER ON BANKRUPTCY § 1.03(4)(a) & (b) (15th ed., rev. 2005).

6

"enforce" the SDA. The court concluded that this was indeed the case, pointing to its December 2003 decision to disallow the administrative claim as clearly interpreting the SDA. *Id.* at 10-11 ("Moreover, the substance of the December 2003 Decision indicates that, in disallowing the administrative claim, the Court did 'interpret' the SDA.")

Close examination of the December 2003 memorandum does not reveal where, in its discussion of Next's administrative claim, the bankruptcy court ever interpreted the SDA. Next's administrative claim sought damages based on Aureal's alleged wrongful disclosure of software developed by Momentum when Aureal sold its assets to Creative. *See* ER Ex. 12 at 24. The court disallowed this claim based on insufficiency of the evidence proffered by Next to prove that disclosure had been made. *Id.* at 24. Next's sole piece of evidence on the alleged disclosure was a letter from a Next employee to a Creative employee, the purport of which was not clear to the court. *Id.* at 24-25. The court also noted that the asset purchase agreement between Aureal and Creative does not mention the Momentum software. *Id.* at 24. It was error to characterize any of this analysis as constituting interpretation of the SDA.

Aureal contends that even if Next's administrative claim does not fall within the SDA attorneys' fees provision, those fees should still be awarded since they are "inextricably intertwined" with fees related to the pre-petition claim, relying on decisions that award fees incurred for representation on issues common to causes of action in which fees were proper and in which they were not. However, the bankruptcy court explicitly refused to rule on this question, and it must now be considered on remand.

**4.    The Bankruptcy Court did not err when it allowed Aureal to recover attorneys' fees owed to the estate representatives's counsel**

Next argues that California Civil Code § 1717 does not permit Aureal recovery of attorneys' fees owed to the estate representatives' attorneys because no attorney-client relationship existed between Aureal and those attorneys. The bankruptcy court found that Aureal was entitled to recover attorneys' fees and costs incurred by counsel for the committee and the trustee of the estate, collectively called the estate representatives. *See* ER Ex. 17 at 5-6.

Next's primary argument is based on a 1995 California Supreme Court case, *Trope v. Katz*, 11

7

Cal. 4th. 274 (1995). Next argues, cites, and even quotes *Trope* as a case standing for the proposition that the term "attorneys' fees" implies the existence of an attorney-client relationship. But a thorough reading of *Trope* does not reveal the passage that Next quotes and relies upon to support its argument. What is instead found in *Trope* is the conclusion that an attorney who represents herself in *propria persona* cannot recover attorneys fees as compensation for the time and effort she expends on her own behalf. *Trope*, 11 Cal. 4th at 292. *Trope* is inapposite to the case at hand.

Here, as the court below explained, Hennigan (counsel for Aureal), Bingham (counsel for the committee), and Luce (counsel for the trustee) all represented the bankruptcy estate. *See* ER Ex. 17 at 6. All of those attorneys incurred fees litigating Next's claims. The language of California Civil Code § 1717 makes clear that the prevailing party awarded attorneys' fees need not be a stated party to the contract. *See* Cal. Civ. Code § 1717. If Next had prevailed, the bankruptcy estate, not Aureal itself, would have been responsible for paying attorneys' fees under Section 1717. Conversely, here the bankruptcy estate has prevailed, and it is entitled to recover from Next.

**5.    The Bankruptcy Court did not abuse its discretion when it found Aureal's request for attorneys' fees reasonable**

Next argues that the bankruptcy court failed to articulate its basis for concluding that Aureal's attorneys' fees were reasonable. Reviewing the substantial proceedings associated with this case, the Court is not troubled by relying on the bankruptcy court, which oversaw these proceedings from the beginning. The bankruptcy court made clear that

> [b]ased on the evidence and argument provided, the Court concludes that, for the most part, Next should be required to pay the fees and costs requested by the three law firms. . . . While narrative descriptions are frequently necessary to permit the Court to determine whether services are reasonable, in this case, no such narrative is necessary. The Court was a first hand witness to the conduct of the case. The Court is persuaded that it was Next's aggressive and unreasonable litigation strategy, not the Debtor's, that caused the costs of the litigation to skyrocket.

ER Ex. 17 at 14. This Court is satisfied that the bankruptcy court considered all relevant evidence and arguments before finding the fees and costs reasonable to the extent that it did. There was no abuse of discretion.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby REVERSES the bankruptcy court's grant of attorneys' fees related to the administrative claim, REMANDS for consideration of whether such fees are inextricably intertwined with fees related to the pre-petition claim, and AFFIRMS the bankruptcy court's grant of attorneys' fees to Aureal in all other respects (Docket No. 1).

**IT IS SO ORDERED.**

Dated: July 25, 2006

_____
SUSAN ILLSTON
United States District Judge